UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEANNE COUCH** | **CIVIL ACTION NO: 22-CV-2674** |
| **VERSUS** | **JUDGE DARREL JAMES PAPILLION** |
| **QBE SPECIALTY INSURANCE CO.** | **MAGISTRATE JUDGE KAREN WELLS ROBY** |

## ORDER AND REASONS

Before the Court are two motions in limine filed by Defendant QBE Specialty Insurance Co. ("QBE"). R. Docs. 37 and 45. Plaintiff Jeanne Couch ("Couch") opposes both motions. R. Docs. 41 and 48. For the reasons assigned below, QBE's initial motion (R. Doc. 37) is **DENIED** and QBE's second motion (R. Doc. 45) is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This case arises out of an insurance dispute between Couch, whose home was damaged in August 2021 as a result of Hurricane Ida, and QBE, Couch's insurer at the time of the storm. R. Doc. 1-1 at ¶¶ 1, 3, 4-5, and 8. On June 24, 2022, Couch filed this lawsuit in Orleans Parish's Civil District Court. R. Doc. 1-1. After QBE removed to this Court, it filed the instant motions in limine seeking to exclude: (1) evidence, argument, and testimony that Couch is entitled to recover on a replacement cost basis; (2) evidence and testimony regarding reserve information; (3) all expert opinions by Couch's expert adjuster, David Bellanger; (4) evidence and testimony regarding the financial status of Couch and QBE; and (5) evidence and testimony regarding other hurricane lawsuits or litigation.

## LEGAL STANDARD

Under Federal Rule of Evidence 402, "irrelevant evidence is not admissible." FED. R. EVID. 402. Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable

than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Even if evidence is relevant, however, "the court may exclude [it] if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Therefore, evidence must both be relevant and overcome any potential prejudicial influence on the jury to survive a motion in limine.

Expert testimony may likewise be excluded under the Federal Rules of Evidence. Rule 702, which governs the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579, 113 S.Ct. 2786 (1993), the Supreme Court explained that trial courts must act as "gatekeepers" for the admissibility of expert testimony. In doing so, district courts must make a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592, 113 S.Ct. 2786. This requires courts to engage in the so-called *Daubert* test, a two-prong inquiry requiring the court to first establish "that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702)). If an expert is deemed qualified, the court must then ensure the expert's proffered testimony is relevant and reliable. *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786 (quoting FED. R. EVID. 702(a)).

2

## ANALYSIS

I.       *Whether Evidence of Replacement Cost Is Admissible*

Couch's policy requires her to repair damage to the covered property before she is entitled to recover on a replacement cost value basis ("RCV"). R. Doc. 37-4. Until that time, the policy entitles Couch to recover on an actual cash value basis ("ACV") only. *Id.* QBE points to this provision in the policy and argues that because Couch has not yet completed any repairs on her property, any evidence "that QBE should have paid [Couch's] claim on a [RCV] basis, or that [Couch] is entitled to recover against QBE . . . on a [RCV] basis" should be excluded. R. Doc. 37-1 at 2. Couch, in response, does not dispute that she failed to repair her property and instead urges the Court to reject this provision, which Couch argues allows insurers to underpay or deny claims while simultaneously insisting the insured perform and personally finance work before she can recover on a RCV basis. R. Doc. 41-1 at 5.

This Court is not the first to consider QBE's argument. Indeed, as QBE points out, a number of state appellate courts have enforced policy provisions that preclude recovery on a RCV basis if an insured fails to make repairs after a loss. *See, e.g., Bosse v. Access Home Ins. Co.*, 267 So.3d 1142, 1146-48 (La. App. 1 Cir. 2018); *Carey v. United Prop. & Cas. Ins. Co.*, 369 So.3d 1, 7-11 (La. App. 1 Cir. 2023); *Orleans Par. Sch. Bd. v. Lexington Ins. Co.*, 118 So.3d 1203, 1214 (La. App. 4 Cir. 2013). Importantly, however, a second line of cases takes the position "that the 'prevention of performance' may void this limitation . . . if the insured can show that it was unable to complete repairs . . . because of underpayment by the insurer." *Mancuso v. Starr Surplus Lines Ins. Co.*, No. 21-CV-3947, 2024 WL 1449069, at *3 (W.D. La. Apr. 3, 2024); *Jackson v. State Farm Fire & Cas. Co.*, 656 F.Supp.3d 676 (W.D. La. 2023); *Mason v. Shelter Mut. Ins. Co.*, 209 So.3d 860, 867 (La. App. 3d Cir. 2016).

Indeed, there appears to be a circuit split among Louisiana state appellate courts. *Mancuso*, 2024 WL 1449069, at *3. This Court has not yet placed its flag in either camp and does not believe a motion in limine is the proper vehicle through which to do so. Accordingly, QBE's motion in limine on this basis is **DENIED**.

II.     *Whether Evidence of Reserve Information Is Admissible*

QBE next seeks to exclude evidence of reserve information. On a broad level, a reserve is "a sum of money . . . set aside—'reserved'—as a fund with which to mature or liquidate . . . future claims." *Pain Clinic, Inc. v. Bankers Ins. Co.*, No. 06-CV-4572, 2007 WL 9780346, at *5 (E.D. La. Mar. 18, 2007) (quoting STEPHEN S. ASHLEY, BAD FAITH ACTIONS: LIABILITY & DAMAGES § 10:31 (2006 2d ed.)) (emphasis omitted). "Insurers in Louisiana and other states are statutorily required to set aside reserves to cover potential claims against the policies they sell." *Id.* Specifically, Louisiana requires that:

> The loss reserves of every insurer shall be at least equal to the aggregate estimated amounts due or to become due on account of all losses or claims of which the insurer has received notice, including the estimated liability arising out of the occurrence of any event which may result in a loss and of which the insurer has received notice, and the estimated liability for all losses which have occurred but of which no notice has been received.

LA. R.S. § 22:766.

QBE asks the Court to exclude evidence and testimony relating to reserve information because it is irrelevant and unduly prejudicial. In support of its argument, QBE argues reserve amounts do not necessarily equate to the amount owed by the insurer following a loss and, thus, offering evidence that QBE did not pay a reserve amount could be prejudicial if the jury, unaware of the regulatory mandate for reserves, were to believe reserves represent QBE's estimate of a covered portion of Couch's claim.

In response, Couch argues reserve information is probative of her bad faith penalty claims

because it goes to QBE's state of mind in making its initial coverage and handling decisions. Couch does not raise any specific arguments regarding whether reserve information would be unduly prejudicial or confusing to the jury.

In considering the admissibility of evidence, the threshold question is, of course, whether the evidence is relevant. FED. R. EVID. 401. As is made clear by the parties' briefs, both of which cite a host of Louisiana district court decisions that support their respective positions, "[t]here is a split in authority regarding the production of loss reserve information in bad faith cases." *eQHealth AdviseWell, Inc. v. Homeland Ins. Co. of N.Y.*, No. 22-CV-50, 2022 WL 16827610, at *2 (M.D. La. Oct. 18, 2022). The Court nevertheless agrees with what appears to be the majority position and finds reserve information is relevant in cases involving bad faith penalty claims. *Meador v. Starr Indem. & Liab. Co.*, No. 19-CV-2378, 2020 WL 8256370, at *3 (E.D. La. Sept. 1, 2020) (collecting cases and noting the position that reserve information is irrelevant in bad faith claim cases "is in the minority in the Eastern District of Louisiana"). The Court does not contest reserves are speculative or that they exist merely for accounting purposes. But "they are valuations made by the insurers themselves," and can provide "insight into the insurer's subjective assessment of the liability." *Pinnacle Med. Servs., Inc. v. Hanover Ins. Co.*, No. 06-CV-8227, 2008 WL 11353743, at *3 (E.D. La. Feb. 28, 2008). This is sufficient to meet Rule 402's liberal threshold of relevancy. *See Treece v. Perrier Condo. Owners Ass'n*, 559 F.Supp.3d 530, 536 (E.D. La. 2021) (citing *Echeverry v. Jazz Casino Co.*, 988 F.3d 221, 235 (5th Cir. 2021)) ("For evidence to have 'any tendency' is a liberal standard, and even evidence that is 'not every probative' is relevant.").

Having determined the reserve information is relevant, the sole remaining question is whether admission of the evidence would be unduly prejudicial to QBE or confusing to the jury. The Court finds *Shelter Mutual Co. v. Culbertson's Ltd.* to be instructive of this question. No. 97-

5

CV-1969, 1999 WL 539520, at *4 (E.D. La. July 23, 1999). In *Shelter Mutual*, Judge Duval considered this exact question and ultimately granted the motion in limine. *Id.* In coming to his decision, Judge Duval explained the "Court does not equate 'reserve' with 'undisputed amount,'" and therefore, "it would be overly prejudicial and confusing to a jury with respect to a bad faith claim to allow testimony concerning the specific amounts reserved." *Id.* at *4 (citing *Molony v. USAA Prop. & Cas. Ins. Co.*, 708 So.2d 1220, 1226 (La. App. 4 Cir. 1998))[1]; *Pain Clinic*, 2007 WL 9780346, at *7 ("The third reason for denying admissibility of reserve information is that its prejudicial effect outweighs its probative value."). The Court agrees with Judge Duval and likewise finds that regardless of the relevancy of reserve information, introduction of such evidence runs the risk of the jury thinking it is a prediction or estimate of the overall liability of Couch's home.[2] For this reason, QBE's motion in limine to exclude evidence of reserve information is **GRANTED**.

    III.    *Whether Mr. Bellanger May Testify As an Expert Witness*

QBE also moves to exclude David Bellanger, Couch's expert witness. In support of its motion, QBE notes Mr. Bellanger's report "only sets forth RCV amounts for the damages he opines resulted from Hurricane Ida" and argues that "[s]hould the Court grant QBE's pending motion [to exclude evidence of RCV coverage], [Mr.] Bellanger's opinions . . . will be irrelevant and should be, therefore, excluded from trial." R. Doc. 45-1 at 7. The Court did not exclude

---

[1] Indeed, as other courts have recognized, *Molony* involved a judicial award for penalties, damages, and attorney's fees, not a motion in limine. *See Sw. La. Convention & Visitors Bureau v. Emps. Mut. Cas. Co.*, No. 06-CV-2006, 2009 WL 1787680, at *4 (W.D. La. June 22, 2009). The Court nevertheless finds the *Molony* Court's instruction not to confuse a reserve amount with an undisputed amount shows the risk associated with admitting evidence of reserve information.

[2] Couch argues "QBE has presented—and *lost*—the same 'reserve information' [motion in limine] before" and cites a string of decisions in support of its proposition. But the sole opinion cited by Couch involving a motion in limine, *Charles Town Properties of Louisiana, LLC v. Certain Underwriters at Lloyds London*, does not include a Rule 403 analysis. No. 22-CV-148, 2023 WL 5669118, at *1 (W.D. La. July 26, 2023).

evidence of RCV coverage, however. Accordingly, Mr. Bellanger's opinions are not, at this time, irrelevant, and QBE's motion to exclude Mr. Bellanger as an expert on this basis is **DENIED**.

IV. Whether Evidence of the Financial Status of QBE and Couch or Other Hurricane Litigation Is Admissible

Finally, QBE seeks to exclude evidence of the financial status of QBE and Couch and evidence of other hurricane litigation. In her opposition brief, Couch notes she does not seek to offer any such evidence at this time. Accordingly, QBE's motion, to the extent it seeks to exclude evidence of Couch or QBE's financial status or other hurricane litigation, is **DENIED AS MOOT**.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** QBE's first motion in limine (R. Doc. 37) is **DENIED** and QBE's second motion in limine (R. Doc. 45) is **GRANTED IN PART** and **DENIED IN PART** as explained herein.

New Orleans, Louisiana, this 20th day of June 2024.

                                                  **DARREL JAMES PAPILLION**
                                                  **UNITED STATES DISTRICT JUDGE**